UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

GEOFFREY BEENE, INC.

    Plaintiff,

        v.

ALLEGIANCE APPAREL GROUP, LLC.

    Defendant.

------------------------------------------------------------x

07 Civ. _____

*JUDGE DANIELS*

**07 CIV 9714**

RECEIVED NOV 01 2007 U.S.D.C. S.D.N.Y. CASHIERS

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Geoffrey Beene, Inc. ("GBI"), by and through its undersigned attorneys, as and for its Complaint against Defendant Allegiance Apparel Group, LLC ("Allegiance") alleges:

### PARTIES

1. GBI is a successful fashion company founded in 1963 by Geoffrey Beene, one of America's fashion pioneers and a leading designer for over forty years until his death in 2004. GBI is a New York corporation with offices in this District at 37 West 57th Street, New York, New York, and is recognized worldwide for high-quality apparel and products in the areas of men's and women's ready-to-wear clothing and accessories and men's fragrances.

2. Allegiance is, upon information and belief, a Connecticut corporation having a principal place of business at 1599 Post Road East, Westport, Connecticut 06880.

3. Allegiance was the licensee under a trademark license, effective November 15, 2000, by which GBI granted Allegiance use of its GEOFFREY BEENE, BEENE EASE, and GB BY GEOFFREY BEENE marks (collectively the "GEOFFREY BEENE Marks") on specific

1

menswear products, particularly men's loungewear, fashion underwear, pajamas and other sleep wear and robes (the "License Agreement").

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this breach of contract action and Complaint based on diversity of citizenship pursuant to 28 U.S.C. § 1332 on the ground that (i) Allegiance is, upon information and belief, a Connecticut corporation with a principal place of business in Connecticut, (ii) GBI is a New York corporation with a principal place of business in New York, and (iii) the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. This Court has personal jurisdiction over Allegiance based on its consent to this Court's jurisdiction in the License Agreement, and independently, on information and belief, Allegiance's presence doing business in New York pursuant to C.P.L.R. § 301.

6. Venue is proper in this district under 28 U.S.C. § 1391(a) and (c), and based on Allegiance's consent to the forum of this Court in the License Agreement.

## NATURE OF ACTION

7. This action arises out of GBI's License Agreement with Allegiance, whereby GBI licensed the GEOFFREY BEENE Marks to Allegiance, beginning in November 2000, for men's loungewear and related products. During the course of this relationship, Allegiance failed to effectively commercialize these products in better department stores and its sales of licensed products decreased dramatically. One Allegiance obligation under the License Agreement that was important to its commercialization of the licensed products was the requirement that Allegiance make substantial advertising expenditures for the licensed products. Allegiance was required to make such specific advertising expenditures each year or pay those sums to GBI, and it failed to comply with these critical advertising obligations. As a result of GBI's 2007 Audit of

Allegiance's payments and performance under the License Agreement, GBI's auditors determined that Allegiance had failed to make substantial portions of the required advertising expenditures (or payments) over a period of several years. The License Agreement was thereafter terminated, effective September 19, 2007, because Allegiance failed to make these substantial past due payments. This breach of contract action is for sums due and owing, as set forth more fully below, under the now terminated License Agreement.

## BACKGROUND

8. GBI is a successful apparel design company that has been in business for over forty years. GBI licenses its GEOFFREY BEENE Marks in apparel and related fields for high quality fashion goods. Through the award-winning work of its founder, the famous American fashion designer Geoffrey Beene, and the production of high quality fashion products bearing the GEOFFREY BEENE and related marks for over forty years, the GEOFFREY BEENE Marks have become and are assets of great value that represent high quality goods with an exceptional and uniquely American design and value. Following the 2004 death of its founder, and at his direction, GBI has committed all of its net profits to charitable causes, such as for research and initiatives relating to Cancer and Alzheimer's disease, the protection of women and children, the protection and welfare of animals, and for scholastic and education endowments.

### The License Agreement

9. On November 15, 2000, GBI and Allegiance entered into the License Agreement, which is attached as Exhibit 1.

10. This lawsuit concerns, among other things, Allegiance's failure to comply with its advertising expenditure requirements pursuant to Paragraph 9 of the License Agreement and

subsequently its failure to remit the unspent advertising budget to GBI, as required under Paragraph 7(b)(3) of the License Agreement's Standard Terms and Conditions.

11. In relevant part, Paragraph 9 of the License Agreement provides that:

> Licensee shall spend for regional and national advertising no less than an amount equal to the greater of (i) the aggregate of the Guaranteed Minimum Fee for such Annual Period and (ii) two percent (2%) of the Net Sales for such Annual Period (the "Advertising Budget"), except that during the first and second Annual Periods, the Advertising Budget shall be set at two percent (2%) of the Net Sales for each such Annual Period.

12. In relevant part, Paragraph 7(b)(3) of the Standard Terms and Conditions portion of the License Agreement ("Standard Terms and Conditions") provides that if during any Annual Period, Allegiance does not in fact spend the entire portion of the Advertising Budget, then it must remit to GBI, "within 90 days after the end of such Annual Period, the balance of the Advertising Budget, without credit to the Advertising Budget for the then current Annual Period."

### The 2001-2002 and 2007 Audits of Allegiance

13. On or about September 1, 2004, GBI conducted an audit for the 2001 and 2002 Annual Periods ("2001-2002 Audit"), which revealed, among other things, a royalty shortfall claimed as a result of improper deductions taken by Allegiance for duty and freight and deficiencies in advertising expenditures. The total of the sum due and payable to GBI, as a result of the 2001-2002 Audit, amounted to $477,096.

14. On September 30, 2005, the parties amended the License Agreement. (See First Amendment to the License Agreement, hereinafter, "Amendment One", attached as Exhibit 2).

15. Amendment One, among other things, confirmed the exercise of the first option to extend, thereby extending the License Agreement until December 31, 2006.

16. Amendment One also provided that to settle the royalty shortfall uncovered in the 2001-2002 Audit, Allegiance shall pay GBI the sum of $300,000.00, "which shall be payable in equal installments of $25,000.00 at the time that quarterly Guaranteed Minimum Fee payments are made during the Term."

17. On August 30, 2006, the parties further amended the License Agreement. (See the Second Amendment to the License Agreement, hereinafter, "Amendment Two", attached as Exhibit 3).

18. Amendment Two extended the term of the License Agreement until December 31, 2007, and it amended the Second Option Period to include the years 2008 and 2009 only.

19. Amendment Two also reduced the Guaranteed Minimum Fee for the year 2007 from $250,000.00 to $125,000.00.

20. Additionally, Paragraph 6 of Amendment Two provided that all national advertising dollars not utilized for 2006 —an amount determined to be $175,500.00— will be utilized for Spring 2007.

21. On or about July, 2007, on behalf of GBI, the accounting firm of Eisikovic & Kane, LLP ("E&K") audited Allegiance's compliance with the License Agreement, including its advertising expenditures and the timeliness of payment (the "2007 Audit").

22. On August 8, 2007, E&K sent a letter to Allegiance's CFO, Alan Rummelsburg, detailing the 2007 Audit's findings and indicating that Allegiance owed GBI a total of $524,015.33 due to its advertising expenditure deficiencies, interests on late payments, and

reimbursement of the costs incurred by the 2007 Audit. (See 2007 Audit Letter attached as Exhibit 4.)

23. On August 20, 2007, GBI's Controller sent Allegiance's CFO a letter requesting Allegiance's position with respect to the determinations of the 2007 Audit no later than August 27, 2007. (See August 20, 2007 Letter attached as Exhibit 5).

24. On August 28, 2007, having received no substantive response, GBI gave Allegiance written notice of default under the License Agreement. (See Notice of Default attached as Exhibit 6).

25. The Notice of Default specifically references the 2007 Audit, the 2007 Audit Letter, and Allegiance's default with respect to its obligations under Paragraph 9 of the Basic Terms of the License Agreement and under Paragraph 7(b)(3) of its Standard Terms and Conditions.

26. The Notice of Default indicates that if payment is not received within 7 days, GBI would reserve its right to terminate the License Agreement pursuant to Paragraph 11 of Standard Terms and Conditions.

27. Allegiance failed to substantively respond to the August 20, 2007 Letter and did not cure the default set forth in the Notice of Default. As of the date of this Complaint, Allegiance continues to refuse to respond substantively to the August 20, 2007 letter and remains in default.

28. On September 19, 2007, GBI invoked its right under Paragraph 11 (a)(1)(B) of the License Agreement to terminate the License Agreement for uncured default for a period of fifteen days after written notice thereof has been given. (See Termination Letter attached as Exhibit 7)

00494786.DOC

## FIRST CAUSE OF ACTION
### (Breach of Contract For $780,265.33 Plus Interest)

29. Plaintiff alleges and incorporates herein paragraphs 1 through 28 of this Complaint.

30. Plaintiff has satisfied all its material performance obligations under the License.

31. As stated in the 2007 Audit Letter, Allegiance materially breached the License Agreement by, among other things, failing to comply with the advertising requirements under Paragraph 9 of the License Agreement.

32. Indeed, the reported sales, the guaranteed minimum fees and actual advertising expenditure for the periods at issue are as follows:

| Period | Sales | 2% of Sales | Guaranteed minimum fees | Advertising Expenditure |
|---|---|---|---|---|
| 1/1/03-12/31/03 | $10,357,282 | $207,146 | $200,000 | $28,000.00 |
| 1/1/04-12/31/04 | $8,418,362 | $168,367 | $250,000 | $142,463.01 |
| 1/1/05-12/31/05 | $1,921,073 | $38,421 | $175,000 | 0.00 |
| 1/1/06-12/31/06 | $1,515,236 | $30,305 | $200,000 | $24,500.00 |

33. Pursuant to the License Agreement, Allegiance should have expended for advertising (or remitted to GBI) the following sums for the 2003-06 period:

| Period | Expenditure based on | Required Expenditure |
|---|---|---|
| 2003 | Actual Sales | $207,146 |
| 2004 | Guaranteed minimums | $250,000 |
| 2005 | Guaranteed minimums | $175,000 |
| 2006 | Guaranteed minimums | $200,000 |
| Total Required Expenditure | | $832,146 |

34. Allegiance failed to meet the advertising expenditure requirements pursuant to Paragraph 9 of the License Agreement and subsequently failed to remit to GBI amounts due as set forth in Paragraph 7 of the Standard terms and Conditions.

35. Additionally, Allegiance failed to spend in advertising for the Spring 2007 the required unexpended 2006 amount of $175,500.00 as provided by Paragraph 6 of Amendment Two.

36. As detailed in the chart below, Allegiance's deficiency in advertising expenditures amounts to $458,037 (rounded to the nearest dollar).

|  | 2003 | 2004 | 2005 | 2006 | Total |
|---|---|---|---|---|---|
| Required Expenditure | $207,146 | $250,000 | $175,000 | $200,000 | $832,146 |
| Actual Advertising Expenditure | ($28,000) | ($142,463) | 0 | ($24,500) | (194,962) |
| Expenditure remitted to GBI | ($179,146.) | 0 | 0 | 0 | ($179,146) |
| Total Deficiency | 0 | $107,537 | $175,000 | $175,500 | $458,037 |

37. The 2007 Audit also uncovered that Allegiance failed to pay interest due pursuant to Paragraph 11(a) of the License Agreement, which required the payment of interest at a contract rate of 3% over the prime rate published on the original due date until such deficiency is paid.

38. E&K assessed $3,240.66 in unpaid interest under, and at the contract rate of, the License Agreement on late royalty payments, which sum consisted of $1,865.84 for 2003, $346.89 for 2004, $245.25 for 2005, and $774.66 for 2006.

39. In addition to the interest calculated on the late royalty payments, Allegiance is liable for unpaid interest at the same contract rate for all other deficiencies, which includes the

00494786.DOC

advertising payments due GBI pursuant to paragraph 7(b)(3) of the License Agreement's Standard Terms and Conditions.

40. The following table reflects the calculation of interest due as of August 31, 2007 for the shortfalls in advertising expenditures. Pursuant to the License Agreement this sum is to be remitted to the Licensor:

|  | Due by | Amount Due | Days Late | Prime + 3% | Interest |
|---|---|---|---|---|---|
| 2004 | 3/30/05 | 107,537.00 | 883 | 8.75 | $22,763.23 |
| 2005 | 3/31/06 | 175,000.00 | 518 | 10.75 | $26,698.29 |
| 2006 | 3/31/07 | 175,000.00 | 153 | 11.25 | $8,276.15 |
| Total interest on deficiencies |  |  |  |  | $57,737.67 |

41. The 2007 Audit Letter assessed the total amount owed, as a result of advertising payments not made through the year 2006 and related audit examination costs, as $524,015.33.

42. Paragraph 3(a)(3) of the Standard Terms and Conditions provides that, upon termination of the License Agreement pursuant to Paragraph 11(a), all amounts due in payment of Guaranteed Minimum Fees become due and payable. Accordingly, the following are immediately due: the Quarterly Minimum Fee for the period of October 1, 2007 to December 31, 2007 ($31,250), the balance due based on the 2001-2002 Audit ($100,000), and the Advertising Fee for 2007 ($125,000).

43. In sum, the total amount due by Allegiance at the termination of the License Agreement is $780,265.33 (consisting of $524,015.33 (deficiency in advertising expenditures through 2006 plus audit expense) and $31,250 (quarterly minimum fee for October 1, 2007 to December 31, 2007) and $100,000 (balance due on 2001-2002 Audit) and $125,000 (advertising fee for 2007)) and interest calculated at a contract rate of 3% plus the prime rate published on the

effective termination date, September 19, 2007, by the successor in interest to The Marine Midland Bank, which is HSBC. That contract rate of interest is 10.75%.

44. As a direct result of Allegiance's wrongful conduct, GBI has been damaged in a substantial amount to be proven at trial and including specific sums due under the contract in an amount not less than $780,265.33 with prejudgment interest at the contract rate of 10.75% from September 19, 2007, plus plaintiff's costs incurred as a result of Allegiance's breach, including but not limited to, its attorneys' fees and expenses.

## SECOND CAUSE OF ACTION
### (Breach of Contract For Attorneys' Fees, Costs and Expense)

45. Plaintiff alleges and incorporates herein paragraphs 1 through 44 of this Complaint.

46. Pursuant to paragraph 11(a) of the License Agreement's Standard Terms and Conditions, Allegiance is obligated to reimburse GBI for all costs incurred by GBI resulting from Allegiance's breach of the License Agreement, including expressly and without limitation GBI's attorneys fees, costs and related expenses incurred in connection with the 2007 Audit, the resulting termination of the License Agreement and this lawsuit.

47. As a direct result of Allegiance's breach of the License Agreement and refusal to make past due payments due thereunder, the License Agreement was terminated and GBI has incurred substantial expenses, including but not limited to pre-litigation attorneys' fees and costs and attorneys' fees and costs in this action, which amounts due under the License Agreement shall be proven at trial or at the conclusion of this action.

## RELIEF SOUGHT

WHEREFORE, plaintiff demands judgment:

1. That Allegiance is liable to GBI for breach of contract, as asserted in the Complaint;

2. That Allegiance is liable under the License Agreement for damages to be proven at trial including an amount not less than $780,265.33 with prejudgment interest from September 19, 2007 at the contract rate of 10.75%;

3. That plaintiff be awarded attorneys' fees and costs incurred as a result of Allegiance's breach of the License Agreement, including the attorneys' fees and costs incurred in this action; and

4. That plaintiff be awarded such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury of any issue triable as of right by a jury.

Dated: New York, New York
November 1, 2007

FROMMER LAWRENCE & HAUG LLP

By: _____
William S. Frommer (WF-6009)
James K. Stronski (JS-4883)
745 Fifth Avenue
New York, New York 10151
(212) 588-0800

Attorneys for Plaintiff Geoffrey Beene, Inc.